**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **JEFFREY D. SUMMERS and JEFFREY'S** | ) | |
| **HOUSE, INC.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No:  15-cv-13358-DJC |
| | ) | |
| v. | ) | |
| | ) | |
| **CITY OF FITCHBURG, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

CASPER, J.                                                              September 15, 2016

**I.      Introduction**

Plaintiffs Jeffrey D. Summers ("Summers") and Jeffrey's House, Inc. ("Jeffrey's House") (collectively, "Plaintiffs") have filed this lawsuit against Defendants City of Fitchburg ("Fitchburg") and Mark A. Goldstein ("Goldstein"), Jeffrey P. Stephens ("Stephens"), John J. Moran Sr. ("Moran"), Robert Lanciani ("Lanciani"), Phil Jordan ("Jordan"), Sally Tata ("Tata") and Kevin Roy ("Roy"), individually and in their official capacities as various Fitchburg officials ("Municipal Defendants") (collectively, with Fitchburg, "Defendants").  Plaintiffs bring claims for attorneys' fees and costs (Count I); abuse of process (Count II); private nuisance (Count III); violations of the Americans with Disabilities Act (Count IV) and the Fair Housing Act (Count V); intentional infliction of emotional distress (Count VI); and interference with advantageous business relationships (Count VII).  Defendants have moved to dismiss the amended complaint. D. 19.  For the reasons stated below, the Court ALLOWS in part and DENIES in part the motion.

## II.      Standard of Review

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the

Court must determine if the facts alleged "plausibly narrate a claim for relief."   Schatz v.

Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  The Court

reads the complaint "as a whole" and must conduct a two-step, context-specific inquiry.  García-

Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close

reading of the complaint to distinguish the factual allegations from the conclusory allegations.  Id.

Factual allegations must be accepted as true, while conclusory allegations are not credited.  Id.

Second, the Court must determine whether the factual allegations present a "reasonable inference

that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46

(1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation mark

omitted).

The Court will dismiss a pleading that fails to include "enough facts to state a claim to

relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To

avoid dismissal, a complaint must provide "'a short and plain statement of the claim showing that

the pleader is entitled to relief.'"  García-Catalán, 734 F.3d at 102 (quoting Fed. R. Civ. P. 8(a)(2)).

Labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  The Court draws on its "judicial

experience and common sense" in determining whether a claim crosses the plausibility threshold.

García-Catalán, 734 F.3d at 103 (citation omitted).  "This context-specific inquiry does not

demand 'a high degree of factual specificity.'"  Id. (citation omitted).

## III.     Factual Background

The following allegations are from Plaintiffs' amended complaint, D. 18, and those

documents incorporated into the amended complaint—the authenticity of which is not challenged,

see Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)—and are accepted as true in considering the motion to dismiss.

Summers is the President, director and clerk of Jeffrey's House, a Massachusetts organization that has operated four "sober homes" in Fitchburg, Massachusetts since 2012. D. 18 ¶¶ 1-2. Sober homes serve those recovering from drug and alcohol abuse by providing a supportive living environment with other recovering individuals. Id. at 3. Summers bought, repaired and opened four properties to serve as the sober homes. Id. at 3. The sober homes are located at 499 Water Street, 10 Burnett Street, 33 Garnet Street and 205-207 High Street in Fitchburg, respectively. Id. ¶ 2.

On February 2, 2013, Curry, a Fitchburg Health Inspector at the time, id. ¶ 4, made certain statements about Jeffrey's House in a Worcester Telegram and Gazette article, id. ¶ 13. In that same article, Lanciani, the Fitchburg Building Commissioner at the time, id. ¶ 6, was quoted as stating that "[a] lodging house designation means the home must comply with state building codes, including a sprinkler system and fire alarms," id. ¶ 13.

Approximately two months later, on April 13, 2013, Stephens, a Fitchburg Health Inspector at the time, id. ¶ 4, performed an hour-long unannounced building inspection of 499 Water Street and noted several violations, id. ¶ 14. Four days later, Stephens returned to 499 Water Street with Moran, the Fitchburg Building Inspector at the time, id. ¶ 5, and the two found additional violations, id. ¶ 14. Stephens and Moran returned to 499 Water Street on May 13, 2013 to re-inspect the previous violations and declared the improvements were unsatisfactory. Id. ¶ 15.

Several months later, on August 21, 2013, Summers was "strongly advised" to attend a meeting at Fitchburg City Hall to discuss "illegal occupancy." Id. ¶ 16. Stephens, Moran and

Lanciani attended the meeting and Summers was told to cease and desist all operations.  Id.  On September 11, 2013, Moran and Stephens returned to 499 Water Street and confirmed that all violations had been corrected.  Id. ¶ 17.

On December 5, 2013, Summers received a letter from Lanciani sent to his property at 10 Burnett Street ordering him to cease and desist operations due to zoning ordinance violations for non-conforming use.  Id.; D. 20-1.  The letter also indicated that there was "no evidence that the building has been inspected" or that a license for use as a boarding house was granted by the License Commission.  D. 20-1.  Summers received a similar letter from Lanciani sent at his property at 33 Garnett Street on January 22, 2014.  D. 18 ¶ 18; D. 20-2.

Summers then received a Summons and Order of notice on March 18, 2014 at all four of his properties, as well as at his home address, from Goldstein, D. 18 ¶ 19, the Fitchburg Assistant City Solicitor at the time, id. ¶ 3.  The Summons and Order directed Summers to appear in Worcester Housing Court on April 25, 2014.  Id. ¶ 19.  Summers attended the consolidated hearing before Judge Diane H. Horan ("Judge Horan") regarding his properties at 10 Burnett Street, 499 Water Street and 33 Garnet Street.  D. 20-3.  Lanciani and Goldstein appeared on behalf of Fitchburg.  D. 18 ¶ 20.  Following the presentation of evidence from both sides, Judge Horan ruled that Summers could continue to operate the sober homes.  Id.  Goldstein and Lanciani insisted that Summers request a reasonable accommodation in writing.  Id.

On May 5, 2014, Summers wrote a letter to Lanciani and requested a reasonable accommodation from Fitchburg's zoning ordinances for his properties at 10 Burnett Street, 499 Water Street and 33 Garnet Street, id.  ¶ 21, and indicated the current and maximum number of occupants of the three respective properties, D. 20-4.  Lanciani granted the request and stated in a letter dated May 30, 2014 that "[t]he City of Fitchburg will allow a reasonable accommodation in

their Zoning Ordinance concerning the use of the above-referenced properties as a sober home for disabled persons recovering from alcohol or drug addiction."  D. 18 ¶ 21; D. 20-5.  Summers received a letter from Goldstein on June 9, 2014 stating that the actions against his properties had been dismissed.  D. 18 ¶ 22; D. 20-6.

Almost a month later, on July 10, 2014, Summers received, via certified mail, a notice from Tata, Lieutenant of the Fitchburg Fire Department at the time, D. 18 ¶ 9, indicating that 10 Burnett Street, 499 Water Street and 33 Garnet Street were in violation of Mass. Gen. L. c 148, § 26H because they were being used as "lodging/boarding homes and house more than six residents," id. ¶ 23; D. 20-7.  The notice stated that Summers, pursuant to § 26H, was responsible for the installation of fire protection systems within six months.  D. 18 ¶ 23; D. 20-7.  The notice also informed Summers of his right to appeal the notice to the board of appeals of the fire safety commission within 45 days pursuant to § 26H.  D. 20-7.  About six months later on February 20, 2015, Summers received, via certified mail, a notice from Roy and Jordan, D. 18 ¶ 24; D. 20-8, Chief and Lieutenant, respectively, of the Fitchburg Fire Department at the time, D. 18 ¶¶ 7-8.  The notice stated that, due to Summers's failure to install fire protection systems at the three properties, he was being fined $1,000 pursuant to Mass. Gen. L. c. 148, § 27 and that payment of the fine and installation of the systems must be made on or before March 1, 2015.  D. 20-8.  The notice also stated that the Fitchburg Fire Department would pursue legal action if Summers failed to comply, but that "[i]t is the Fitchburg Fire Department's position to work with you to fulfill this statutory requirement, rather then [sic] pursue the above course of action."  Id.

On April 9, 2015, Summers received three letters from the Fitchburg Fire Department summoning him to the Worcester Housing Court for a hearing on May 1, 2015.  D. 18 ¶ 25; D. 20-

9. Summers attended the hearing before Judge Horan and Goldstein, Jordan and Roy appeared on behalf of Fitchburg.  D. 18 ¶ 25.  Summers was then summoned back to Worcester Housing Court on July 17, 2015 for contempt since Judge Horan had ruled against him following the May 2015 hearing.  Id. ¶ 26; see D. 29 at 5.  The contempt charges were dropped, however, because Summers did not receive proper notice of Judge Horan's ruling.  D. 18 ¶ 26.  Summers informed Judge Horan that he could not afford to install the fire protection systems at the three properties, but would instead reduce the number of residents of each property to five people—thus falling outside the requirements of § 26H—pending further review.  Id.  On July 28, 2015, Summers received a letter from Goldstein requesting a statement that "you intend to have no more than five (5) occupants residing in any of the three properties."  Id. ¶ 27; D. 20-10.  The letter also stated that "[t]he Fire Department will want to make sporadic inspections to verify the number of individuals residing at the properties" and if Summers agreed, a stipulation of dismissal could be prepared.  D. 18 ¶ 27; D. 20-10.  Summers explained that "the process of sporadically inspecting persons with disabilities is a violation of ADA, FHAA, and HIPPA Laws."  D. 18 ¶ 27.  Summers then received a letter from Goldstein stating that Fitchburg and the fire department were bringing an action for the violations and that a hearing was set for September 25, 2015.  Id. ¶ 28.

Shortly thereafter, on August 17, 2015, a resident of 33 Garnet Street notified Summers that there was a "Cease and Desist" sticker on the front door of the property.  Id. ¶ 29.  Summers inquired about the sticker at Fitchburg City Hall where Moran notified him that a door had been illegally installed at the back of the property and that there was a $300 fine for performing work without a permit.  Id.; D. 20-11.  According to a report from the Office of the Fitchburg Building Commissioner dated August 12, 2015, a telephone complaint was received regarding a construction project occurring at night in violation of certain regulations.  Summers explained that

the door had broken and it needed to be replaced promptly because it presented a hazard.  D. 18 ¶

29.  Moran and Lanciani still insisted that Summers pay the fine, but could not locate the statute

requiring as such.  Id.

IV.     **Procedural History**

Plaintiffs filed their complaint on September 14, 2015, D. 1, and, with leave from the Court,

D. 17, filed an amended complaint on February 18, 2016, D. 18.  Defendants have now moved to

dismiss the amended complaint.  D. 19.  The Court heard the parties on the pending motion and

took the matter under advisement.  D. 29.

V.      **Discussion**

A.      **Service of Process**

Defendants move to dismiss the action based on Fed. R. Civ. P. 12(b)(4), arguing that

Plaintiffs have failed to file proof of service as to any of the Defendants since the complaint was

first filed in September 2015 and was amended in February 2016.  D. 20 at 1, 18.  "Before a federal

court may exercise personal jurisdiction over a defendant, the procedural requirements of service

of process must be satisfied."  Cichocki v. Mass. Bay Cmty. Coll., No. 15-cv-10663-JGD, 2016

WL 1239236, at *3 (D. Mass. Mar. 29, 2016) (quoting Aly v. Mohegan Council-Boy Scouts of

Am., No. 08-cv-40099-FDS, 2009 WL 3299951, at *1 (D. Mass. Apr. 20, 2009)) (internal

quotation marks omitted).  Indeed, the record contains no proof of service, such as an affidavit by

the server, Fed. R. Civ. P. 4(l)(1), as required by Fed. R. Civ. P. (4)(e), (j) and (m).  On a motion

to dismiss brought under Fed. R. Civ. P. 12(b)(4), "the plaintiff must establish prima facie evidence

that there was sufficient process."  Allied Home Mortg. Capital v. Belli, No. 12-cv-10158-GAO,

2012 WL 3059423, at *4 (D. Mass. July 25, 2012) (internal quotation mark and citation omitted).

In response, counsel for Plaintiffs "admits of his unfamiliarity with ECF but can assure the court

that services [sic] was accepted because on several occasion Counsel would call or email opposing

Counsel and ask if service can be delivered beyond the process of ECF." D. 23 at 17.

Where Defendants do not claim any prejudice, D. 20 at 18, and the Court does not see any,

Plaintiffs are ordered to show good cause for their failure to comply with Fed. R. Civ. P. 4(l) and

have fourteen days to file proof of service. See Fed. R. Civ. P. 4(m); Upromise, Inc. v. Angus,

No. 13-cv-12363-DJC, 2014 WL 212598, at *13 (D. Mass. Jan. 21, 2014).

### B.      Count I – Attorneys' Fees and Costs

In Count I, captioned as "Attorneys' Fee[s], Expenses, and Cost," Plaintiffs appears to seek

attorneys' fees and costs under federal and state law. D. 18 at 9. Defendants argue that Count I

does not state a "viable legal claim" and must be dismissed, see D. 20 at 18, to which Plaintiffs

did not respond to in their opposition, see D. 23. When presented with this circumstance, courts

in this district have construed such a claim as a request for relief. See, e.g., Doucot v. IDS Scheer,

Inc., 734 F. Supp. 2d 172, 190 (D. Mass. 2010) (treating claim for "attorney's fees, costs and

disbursements" as a request for relief where plaintiff also requested attorney's fees in the "request

for relief" section of his complaint) (citing Estate of Barrett ex rel. v. United States, 337 F. Supp.

2d 370, 372 n.1 (D. Mass. 2004)). As such, Count I is dismissed, but the similar relief sought in

the prayer for relief, D. 18 at 14, shall stand.

### C.      Counts II, VI and VII – Intentional Tort Claims

Plaintiffs bring claims against Fitchburg and the Municipal Defendants, both in their

individual and official capacities, for certain intentional torts involving litigation and enforcement

actions against Plaintiffs' sober homes.[1] As Defendants point out, D. 20 at 7, these claims against

---

[1] The Court notes that while the Municipal Defendants are named in their official and individual capacities in the case caption, D. 18 at 1, Plaintiffs do not appear to distinguish their claims and allegations as relating to the Municipal Defendants in either capacity, except as to the intentional

Fitchburg and the Municipal Defendants in their official capacities are barred by the Massachusetts

Tort Claims Act ("MTCA"), Mass. Gen. L. c. 258, § 10(c).

The MCTA, as a limited waiver of sovereign immunity, bars claims against municipalities

for intentional torts.  See Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 156-57 (D. Mass.

2012), aff'd, 714 F.3d 29 (1st Cir. 2013).  Notably, claims against the Municipal Defendants in

their official capacities are claims against Fitchburg itself.  See Damon v. Hukowicz, 964 F. Supp.

2d 120, 136 (D. Mass. 2013) (citing McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997));

cf. O'Malley v. Sheriff of Worcester Cnty., 415 Mass. 132, 141 n.13 (1993) (noting that to avoid

sovereign immunity, a plaintiff must sue a government official in his or her individual capacity).

Section 10(c) of the MCTA does not waive immunity for "any claim arising out of an intentional

tort, including . . . intentional mental distress, . . . malicious abuse of process . . . [and] interference

with advantageous relations or interference with contractual relations."  Considering that

Plaintiffs' claims for abuse of process, intentional infliction of emotional distress and interference

with advantageous business relations are explicitly barred by Section 10(c), they must be

dismissed.

As to Plaintiffs' intentional tort claims against the Municipal Defendants in their individual

capacities, the MCTA does not apply.  See Nelson v. Salem State Coll., 446 Mass. 525, 537-38

(2006) (discussing how Section 10(c) does not shield a public official sued in their individual

capacity for an intentional tort).  Common law immunity, however, is applicable.  Id.  Under

Massachusetts common law, government employees acting within their discretion as public

officials and in good faith are shielded from liability.  See Najas Realty, LLC v. Seekonk Water

---

infliction of emotional distress claims (Count VI), alleging that the "parties act[ed] as *individuals*,"
id. at 2 (emphasis in the original).

Dist., 821 F.3d 134, 145-146 (1st Cir. 2016) ("Najas Realty II") (discussing how, in affirming dismissal of intentional tort claims, "a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption") (quoting Nelson, 446 Mass. at 537 (internal quotation marks omitted)).

First, Plaintiffs do not allege that any of the Municipal Defendants acted outside of their official capacity as fire department personnel, health and building inspectors and as the city's legal counsel in bringing litigation and enforcement actions against Plaintiffs or in inspecting the sober homes. See Najas Realty, LLC v. Seekonk Water Dist., 68 F. Supp. 3d 246, 259 (D. Mass. 2014) ("Najas Realty I") (dismissing intentional tort claims against water department superintendent in his individual capacity where "highlight[ing] concerns regarding the potential for high clean up costs and serious health risks were well within his authority"), aff'd, Najas Realty II, 821 F.3d 134; Nelson, 446 Mass. at 538 (considering public employees in charge of investigating criminal activity on a college campus as acting within their discretion by implementing an investigatory policy using surveillance cameras where criminal activity was suspected).

Second, Plaintiffs fail to allege sufficiently any of the Municipal Defendants acted in bad faith or with malice. Plaintiffs allege, however, that Curry made unspecified "disparaging and untrue statements about" Jeffrey's House and that Lanciani stated that a lodging house must comply with state building codes such as those requiring fire suppression systems. D. 18 ¶ 13. Plaintiffs also allege that the Municipal Defendants acted with "an ulterior purpose," id. at 10, "tried to use whatever means they had to close the homes," id. at 12, harbor certain "attitudes" motivating them to interfere with Plaintiffs' business, id. at 13, and that "cities as a whole do not like nor respect sober homes because of whatever issues can arise from those home [sic]," id. at

12. Plaintiffs allege that the Municipal Defendants did not like the sober homes "as describes [sic] in several cases across the country." Id. ¶ 24. While Plaintiffs point to the timing of the Municipal Defendants' conduct in initiating a fire enforcement action against Plaintiffs following the resolution of the zoning action, and in imposing a $300 fine for performing work without a permit, see D. 23 at 11-14, Plaintiffs put Fitchburg on notice of the number of residents occupying the sober housing prior to the fire enforcement action, see D. 18 ¶ 23; D. 20-4; 20-7. As such, with "[e]ven the most liberal reading of the facts alleged," Plaintiffs' generalized and conclusory allegations, without more, do not overcome the presumption that the Municipal Defendants were acting in good faith in carrying out their official duties. See Najas Realty I, 68 F. Supp. 3d at 259 (citing S. Boston Betterment Trust Corp., 438 Mass. at 69). Notably, in contrast to other cases where officials were pressured by the community to close sober homes, see, e.g., Safe Haven Sober Houses, LLC v. Good, No. 11-P-1076, 2012 WL 3930121, at *3 (Mass. App. Ct. Sept. 11, 2012), there are no such allegations here to suggest that the Municipal Defendants were acting in bad faith or with an ulterior motive,  see Najas Realty II, 821 F.3d at 145-146 (concluding that "the complaint failed to state a plausible claim that bad faith or malice, as opposed to a concern for the Town's resident general welfare, motivated [plaintiff's] behavior.  Plaintiffs' conclusory allegations otherwise are not enough"). Given, however, Plaintiffs' contentions in its opposition to the motion to dismiss, D. 23 at 10  (mentioning "interactions," "fights" and "arguments" with Defendants); see Portfolioscope, Inc. v. I-Flex Sols. Ltd., 473 F. Supp. 2d 252, 256 (D. Mass. 2007) (noting that these unspecified assertions made in their Opposition cannot amend or supplement their pleading) (citation omitted), the Court cannot say it would be futile to amend as to the intentional tort claims against the Municipal Defendants in their individual capacities and, therefore, these claims are dismissed without prejudice.

D.      **Count III – Private Nuisance**

Plaintiffs assert that Defendants interfered with the use and enjoyment of the sober homes by imposing fines, initiating lawsuits and performing unnecessary visits, constituting a private nuisance. See D. 18 at 10. To bring a private nuisance claim, a plaintiff must show that another property owner "creates or permits a condition or activity on his property that causes substantial and unreasonable interference with another person's use and enjoyment of their own property." Wiesman v. Hill, 629 F. Supp. 2d 106, 114 (D. Mass. 2009) (citing Morash & Sons v. Commonwealth, 363 Mass. 612, 616 (1973)). As such, "a nuisance claim requires two separately owned parcels of real property." Id. (citing Doe v. New Bedford Hous. Auth., 417 Mass. 273, 288-289 (1994)). Plaintiffs, however, have not alleged that the Defendants own any property on which there is a condition or activity that interferes with the use of the sober homes. Indeed, Plaintiffs' allegations surround Defendants' litigation and enforcement actions which do not implicate any other property or give rise to a typical nuisance claim. See Rattigan v. Wile, 445 Mass. 850, 858 (2006) (recognizing that "[n]uisances at common law frequently arise from offensive sights, sounds or smells") (internal quotation marks and citation omitted)). Accordingly, Count III is dismissed.

E.      **Counts IV and V – Violations of the ADA and FHAA**

In Counts IV and V, Plaintiffs assert that Defendants violated Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12131-12165,[2] and the Fair Housing

---

[2] While Plaintiffs do not specify, by challenging a municipality's actions in regards to disabled individuals, they appear to bring claims under Title II of the ADA. See, e.g., Tsombanidis v. West Haven Fire Dept., 352 F.3d 565 (2d Cir. 2003); Habit Mgmt., Inc. v. City of Lynn, 235 F. Supp. 2d 28, 28 (D. Mass. 2002). Notably, unlike Title I claims, administrative exhaustion is not required for a Title II claim. See Mitchell v. Mass. Dep't of Correction, 190 F. Supp. 2d 204, 209 (D. Mass. 2002) (collecting cases); see also Quinones v. Univ. of P.R., No. 14-cv-1331-JAG, 2015 WL 631327, at *2 (D.P.R. Feb. 13, 2015).

Amendments Act ("FHAA"), 42 U.S.C. § 3601, *et seq.*[3]  D. 18. at 11-12.  Plaintiffs allege that

Defendants failed to provide a reasonable accommodation to the Massachusetts Sprinkler Law,

Mass. Gen. L. c. 148, § 26H ("Sprinkler Law"), selectively enforced the Sprinkler Law and

discriminatorily imposed fines for failing to obtain a building permit, D. 18 at 11-12; ¶¶ 23-24,

29.[4]  Regardless, Plaintiffs only address the arguments raised in Defendants' motion to dismiss

surrounding their claims for a reasonable accommodation of the Sprinkler Law under the ADA

and FHAA.  D. 23 at 16.  As such, their remaining claims in Counts IV and V regarding

discrimination in the form of disparate treatment or impact or the imposition of the building permit

fine are considered waived and are dismissed without prejudice.  See Perkins v. City of Attleboro,

969 F. Supp. 2d 158, 177 (D. Mass. 2013) (dismissing count not addressed in plaintiff's opposition

to a motion to dismiss) (citing Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011)

(recognizing that "[i]t should go without saying that we deem waived claims not made or claims

adverted to in a cursory fashion, unaccompanied by developed argument")); Tian v. Aspen Tech.,

Inc., 53 F. Supp. 3d 345, 369 n.8 (D. Mass. 2014); see also Local Rule 7.1(b)(2) (providing that

"[a] party opposing a motion shall file, in the same (rather than a separate), document a

---

[3] Although an administrative action can be brought through the U.S. Department of Housing and
Urban Development under the FHAA as an "alternate avenue" of enforcement, the FHAA does
not "require that an aggrieved person exhaust his administrative remedies before filing a civil
action, nor does it require that plaintiff select one avenue to the exclusion of the other."  In re
Enjoined Litigant Grandoit, No. 14-msc-91131-WGY, 2014 WL 3749188, at *2 (D. Mass. July
28, 2014) (citation omitted).  The case Defendants rely upon in arguing that Plaintiffs failed to
exhaust administrative remedies under the FHAA, D. 20 at 13 n.10, is inapplicable as it simply
notes that the trial court judge ruled that "the plaintiff could not prevail under G.L. c. 151B because
he had failed to exhaust his administrative remedies" and went on to consider plaintiff's FHAA
claims, see Rakuz v. Spunt, 39 Mass. App. Ct. 171, 174 (1995).

[4] In their memorandum of law, Defendants indicate that Fitchburg has not sought further actions
in Housing Court or pursued confirmation that Plaintiffs have complied with the Sprinkler Law.
D. 20 at 9.

memorandum of reasons, including citation of supporting authorities, why the motion should not

be granted").[5]

While the focus of Plaintiffs' claims and arguments surround a reasonable accommodation

of the Sprinkler Law under the ADA and FHAA, another court in this district recently held that

the Massachusetts Zoning Act ("MZA")[6] enjoins the enforcement of the Sprinkler Law against

sober homes.  See Brockton Fire Dep't v. St. Mary Broad St., LLC, No. 14-cv-13216-RGS, 2016

WL 1452336, at *1 (D. Mass. Apr. 13, 2016) ("Brockton Fire").

As discussed in Brockton Fire, the Sprinkler Law applies to those cities and towns which

have accepted its provisions, Mass. Gen. L. c. 148, § 26H, and Fitchburg adopted the provisions

by order in 2002, D. 20-9.  In relevant part, the Sprinkler Law provides that:

> [E]very lodging house or boarding house shall be protected throughout with an
> adequate system of automatic sprinklers in accordance with the provisions of the
> state building code. . . .
>
> For the purposes of this section "lodging house" or "boarding house" shall mean a
> house where lodgings are let to six or more persons not within the second degree
> of kindred to the person conducting it, but shall not include fraternity houses or
> dormitories, rest homes or group residences licensed or regulated by agencies of
> the commonwealth.

The MZA protects disabled persons from being discriminated against by cities and towns

through the enforcement of certain local laws.  The MZA provides, in relevant part, that:

> Notwithstanding any general or special law to the contrary, local land use and
> health and safety laws, regulations, practices, ordinances, by-laws and decisions of

---

[5] Plaintiffs' arguments at oral argument cannot otherwise resurrect their waived claims.  Kunelius v. Town of Stow, 588 F.3d 1, 19 (1st Cir. 2009) (citing Nieves-Vega v. Ortiz-Quinones, 443 F.3d 134, 137 n.1 (1st Cir. 2006) (concluding that claims raised for the first time at oral argument are forfeited)).

[6] The Court notes that, while not explicitly mentioned in the amended complaint, a liberal construction of Plaintiffs' claims also implicate the Massachusetts Zoning Act, Mass. Gen. L. c. 40A, § 3, to the extent Plaintiffs assert that certain laws enforced against the sober homes are discriminatory, see D. 18 at 12.

a city or town shall not discriminate against a disabled person.  Imposition of health and safety laws or land-use requirements on congregate living arrangements among non-related persons with disabilities that are not imposed on families and groups of similar size or other unrelated persons shall constitute discrimination.   The provisions of this paragraph shall apply to every city or town, including, but not limited to the city of Boston and the city of Cambridge.

Mass. Gen. L. c. 40A, § 3.  The Sprinkler Law is, on its face, a "health and safety law," aimed at protecting residents of lodging or boarding houses from fire hazards.  See Brockton Fire, 2016 WL 1452336, at * 1.  Those recovering from drug and alcohol abuse are considered disabled under the MZA.  See id. (collecting cases).  While a question of fact persists as to whether Plaintiffs currently operate their sober homes with six or more unrelated persons, D. 18 ¶ 26, such that they fall under the requirements of the Sprinkler Law as a "lodging house or boarding house," the law exempts families of six or more related persons and group homes such as dormitories, fraternities or rest homes.  That is, the Sprinkler Law imposes a health and safety requirement on sober homes—a group living arrangement consisting of unrelated disabled persons—which is not imposed on families and certain unrelated groups of a similar size.  The Sprinkler Law thus runs afoul of the MZA where it is a "facially disparate" statute, Brockton Fire, 2016 WL 1452336, at * 1, which "shall constitute discrimination," Mass. Gen. L. c. 40A, § 3.  This Court agrees with the reasoning in Brockton Fire and concludes that Plaintiffs have stated a claim that the Sprinkler Law is discriminatory under the MZA and Defendants' motion is, therefore, denied as to these claims.

To the extent the Sprinkler Law is valid, the Court considers Plaintiffs' claims that Defendants have failed to provide a reasonable accommodation to the Sprinkler Law under the ADA and FHAA.  "Both statutes require that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities." Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003) (internal quotation marks and citation committed).  Because the ADA and

FHAA are similar in the housing context the statutes are typically considered together.  See Astralis

Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010) (citing

Tsombanidis, 352 F.3d at 573 n.4 (noting that "[d]ue to the similarities between the statutes, we

interpret them in tandem")).

To establish a *prima facie* case for failure to accommodate under the ADA and FHAA,

Plaintiffs must show that:  (1) the persons at issue are handicapped as defined by the statutes; (2)

that the party charged knew or should reasonably have known of the handicap; (3) that a particular

accommodation that is both reasonable and necessary was requested to allow the handicapped

persons an equal opportunity to use and enjoy the housing in question; and (4) the that the party

charged refused to make the requested accommodation.  See id. at 67; Higgins v. New Balance

Athletic. Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999).

Defendants argue that they are either not required to provide an accommodation or  that

they provided such an accommodation by allowing Plaintiffs to reduce the number of residents of

each sober home to five people to fall outside the requirements of the Sprinkler Law.  D. 20 at 17.

Based upon Plaintiff's allegations, however, that the accommodation was contingent upon

Defendants making "[s]poradic inspections to verify the number of individuals residing in the

properties," to which Plaintiffs objected, D. 18 ¶ 27, a question of fact persists as to whether such

an accommodation was reasonable and necessary given the circumstances and thus whether

Defendants refused to accommodate Plaintiffs in this regard.  See Valle-Arce v. Puerto Rico Ports

Auth., 651 F.3d 190, 198 (1st Cir. 2011) (concluding that whether the defendant failed to provide

a reasonable accommodation is a question of fact for the jury); Wisconsin Cmty. Servs., Inc. v.

City of Milwaukee, 465 F.3d 737, 749 (7th Cir. 2006) (recognizing that this a "highly fact-specific

inquiry and requires balancing the needs of both parties" (internal quotation marks and citation

omitted)).  As such, Plaintiffs have stated a reasonable accommodation claim under the ADA and

FHAA.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part Defendants'

motion to dismiss.  D. 18.  Plaintiffs shall have until September 29, 2016 to show good cause for

their failure to comply with Fed. R. Civ. P. 4(l) and file proof of service.  The Court ALLOWS

Defendants' motion as to claims for attorneys' fees and costs (Count I), but will allow the same

request to stand as part of the prayer for relief.  The Court ALLOWS Defendants' motion as to

claims against Fitchburg and the Municipal Defendants in their official capacities for abuse of

process (Count II), intentional infliction of emotional distress (Count VI) and interference with

advantageous business relationships (Count VII) and those claims are DISMISSED.  The Court

ALLOWS the Municipal Defendants' motion as to claims in their individual capacities for abuse

of process (Count II), intentional infliction of emotional distress (Count VI) and interference with

advantageous business relationships (Count VII) and those claims are DISMISSED without

prejudice.  The Court ALLOWS Defendants' motion as to the private nuisance claims (Count III)

and those claims are DISMISSED.  The Court ALLOWS Defendants' motion as to discrimination

claims under the ADA and FHAA in the form of disparate treatment or impact or imposition of

the building permit fine (Counts V & IV) which are DISMISSED without prejudice.  The Court

DENIES Defendants' motion as to discrimination claims under the MZA and reasonable

accommodation claims under the ADA and FHAA (Counts V & IV) relating to the Sprinkler Law.

     **So Ordered.**

                                        /s/ Denise J. Casper
                                        United States District Judge

17