# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JEFFREY D. SUMMERS and JEFFREY'S HOUSE, INC., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No: 15-cv-13358-DJC ) |
| CITY OF FITCHBURG et al., | ) ) ) |
| Defendants. | ) ) ) ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                 June 26, 2018

## I.     Introduction

Plaintiffs Jeffrey D. Summers ("Summers") and Jeffrey's House, Inc. ("Jeffrey's House") (collectively, "Plaintiffs") have filed this lawsuit against Defendants City of Fitchburg ("Fitchburg") and Mark A. Goldstein ("Goldstein"), Jeffrey P. Stephens ("Stephens"), John J. Moran Sr. ("Moran"), Robert Lanciani ("Lanciani"), Phil Jordan ("Jordan"), Sally Tata ("Tata") and Kevin Roy ("Roy"), individually and in their official capacities as various Fitchburg officials ("Municipal Defendants") (collectively, with Fitchburg, "Defendants"). Plaintiffs; three remaining are: civil conspiracy to interfere with civil rights; violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count IV); and violation of the Fair Housing Amendments Act ("FHAA"), an amendment to the Fair Housing Act (the "FHA"), 42 U.S.C. §

1

3601 *et seq.* (Count V). D. 44. Defendants have moved for summary judgment. D. 52. For the reasons stated below, the Court ALLOWS the motion.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010) ("Borges"). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

The local rules for the District of Massachusetts require parties opposing summary judgment to provide "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." D. Mass. L.R. 56.1. If the opposing party does not dispute the material facts of record as stated by the movant in accordance with Local Rule 56.1, they may be deemed

admitted. Id. Plaintiffs have not disputed the material facts offered by Defendants and have not identified any specific admissible evidence supporting such disputes. See D. 54; D. 64[1] at 2-3. Accordingly, the Court deems the material facts offered by Defendants to be admitted. See Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003). Summers is the President of Jeffrey's House, a non-profit entity that operates four sober houses at 499 Water Street, 10 Burnett Street, 33 Garnett Street and 205/207 High Street in Fitchburg, Massachusetts. D. 54, ¶¶ 1-2. The sober houses offer living quarters to a group of people recovering from drug and/or alcohol addiction to provide peer support and maintain their sobriety. D. 54, ¶ 3.

On February 2, 2013, the Worcester Telegram and Gazette Published an article about the 499 Water Street property after local health inspectors were not permitted to inspect the property. D. 54, ¶ 10. On April 17, 2013, Stephens, a Fitchburg health inspector, inspected the 499 Water Street house. D. 54, ¶ 12. After discovering numerous violations of Massachusetts sanitary code, Stephens sent Plaintiffs a letter describing the violations and that they must take action to correct them within thirty days of the notice. D. 54, ¶¶ 12-13. On May 13, 2013, Stephens and Moran, a Fitchburg building inspector, inspected 499 Water Street again and confirmed that most of the violations had been fixed, but some repair of handrails still needed to be completed. D. 54, ¶ 14. On August 21, 2013, Summers met with Stephens, Moran and Lanciani, the former Fitchburg Building Commissioner. D. 54, ¶ 15. Stephens, Moran and Lanciani told Summers that the sober houses were violating local zoning ordinances and asked him to cease operating them, which

---

[1] Plaintiffs' opposition materials, D. 63; D. 64; D. 65, were filed after the deadline for opposition and were labeled as a cross-motion for summary judgment. However, at the motion hearing, Plaintiffs' counsel confirmed that these filings should only be construed as opposing Defendants' motion for summary judgment, 12/14/17 draft hearing transcript at 2, and, therefore, the Court DENIES D. 63, 64 and 65 as moot and considers them only as opposition to Defendants' motion for summary judgment.

3

Summers refused to do.  D. 54, ¶ 16.  On September 11, 2013, Fitchburg officials inspected 499 Water Street again, confirming that all the issues identified in the April 2013 inspection had been corrected.  D. 54, ¶ 17.

On December 5, 2013, Fitchburg sent Summers a letter notifying him that the 10 Burnett Street house was being operated as a rooming or boarding house and was thus in violation of local zoning ordinances.  D. 54, ¶ 18.  On January 22, 2015, Fitchburg sent Summers another letter notifying him that the 33 Garnett Street house was also violating local zoning ordinances.  D. 54, ¶ 19.  After Summers took no action to correct these violations, Goldstein, the Assistant City Solicitor, filed an enforcement action in Worcester Housing Court.  D. 54, ¶ 20.  At a hearing addressing all outstanding violations in the sober houses, Summers asked that Fitchburg provide reasonable accommodation from the zoning laws on the basis of the residents' disabilities due to alcohol or drug dependency.  D. 54, ¶¶ 21-22.  Summers agreed to send a letter to Fitchburg, which he did on May 5, 2014, memorializing his request at the hearing and giving other information about the sober houses, including the number of occupants.  D. 54, ¶¶ 23-24.  On May 30, 2014, Lanciani sent a letter to Summers granting the reasonable accommodation request.  D. 54, ¶ 25. Goldstein then voluntarily dismissed the pending action in Worcester Housing Court.  Id.

On July 10, 2014, Tata, a member of the Fitchburg Fire Prevention Bureau, sent Summers a letter informing him that three of the sober houses, classified as lodging homes, were required to install fire suppression or sprinkler systems under Mass. Gen. L. c. 148, § 26H (the "Sprinkler Law"), which requires lodging or boarding homes housing six or more individuals not within the second degree of kindred to the person conducting it to install a fire suppression system, D. 54, ¶ 26.  The letter provided a six-month period to install the fire suppression system, consistent with the Sprinkler Law, but Plaintiffs did not install the system or appeal the determination.  D. 54,

¶¶ 28-29. On February 20, 2015, Tata sent a second letter to Plaintiffs notifying them that they had been fined $1,000 due to the failure to comply by installing a fire suppression system. D. 54, ¶ 30. Plaintiffs still did not install a fire suppression system, nor did they pay the fine, after which Goldstein began a new enforcement action in Worcester Housing Court on April 9, 2015. D. 54, ¶ 31. The housing court determined that Plaintiffs were obligated to comply with the Sprinkler Law by installing a fire suppression system in each of the sober houses. D. 54, ¶ 32.

On July 17, 2015, at a subsequent hearing, Summers proposed lowering the occupancy of each of the sober houses to five or fewer people to become exempted from the requirements of the Sprinkler Law until the dispute could be fully adjudicated. D. 54, ¶ 33. On July 28, 2015, Goldstein sent Summers a letter asking that he memorialize this representation of his intent to lower the occupancy levels, and that he also agree to allow the Fire Department to conduct "sporadic inspections" to verify occupancy. D. 54, ¶ 34. Viewing the proposed inspections as a violation of the sober houses' occupants' rights as disabled individuals, Summers decided not lower the occupancy levels of the sober houses, and maintained his refusal to install fire suppression systems. D. 54, ¶¶ 35-37, 39. Summers represented to Goldstein in a phone call that he believed the inspections would be disruptive for the occupants and would potentially cause them anxiety due to their disabilities. D. 54, ¶ 37. Summers also viewed the cost of installing fire suppression systems, which he estimated to be between $35,000 and $40,000 per house, as prohibitive. D. 54, ¶ 38. Summers did not consider any alternative mechanism by which Fitchburg could be permitted to verify the proposed lowered occupancy levels. D. 54, ¶ 40.

### IV. Procedural History

Plaintiffs instituted this action on September 14, 2015. D. 1. Plaintiffs filed an amended complaint (the "FAC") on February 18, 2016. D. 18. On September 15, 2016, the Court allowed

5

in part and denied in part Defendants' motion to dismiss the FAC, dismissing Plaintiffs' claims for attorney's fees and costs (Count I), abuse of process (Count II), private nuisance (FAC Count III), intentional infliction of emotional distress (Count VI), and interference with advantageous business relations (Count VII), leaving Counts IV and V as the only remaining claims. D. 31. On December 16, 2016, Plaintiffs filed a second amended complaint ("SAC"), which reasserted Counts I, II, IV, V, VI, and VII,[2] as well as a new claim for civil conspiracy to interfere with civil rights (SAC Count III). D. 44. The parties proceeded with discovery. The Court heard the parties on the pending motion and took this matter under advisement. D. 66.

V.      Discussion

   A.      **Counts III, IV and V Are The Only Remaining Claims**

As an initial matter, the Court clarifies that there are only three claims remaining in this case. Plaintiffs reasserted Counts I, II, IV, V, VI, and VII in the SAC, but pursuant to its Memorandum and Order allowing in part and denying in part Defendants' motion to dismiss, D. 31, the Court dismissed Counts I, II, VI and VII. Although the Court dismissed Counts II, VI and VII without prejudice, contemplating the possibility of an amendment, D. 31 at 11, there are no new allegations in the SAC that would distinguish the reasserted claims from those the Court had previously dismissed in the FAC.

Plaintiffs have also reasserted Counts IV and V under theories of discrimination or disparate impact in the imposition of the fines, D. 44, ¶¶ 34-40, which the Court dismissed, D. 31 at 17, but do not include any new factual allegations that would support these claims. Moreover, it appears that Plaintiffs' brief concedes that the only remaining active claims are SAC Count III,

---

[2] Count VII is listed as Count V in the SAC. D. 44 at 12. However, because it is identical to Count VII in the FAC, D. 18 at 13, and follows Count VI, the Court refers to it as Count VII.

and Counts IV and V under a reasonable accommodation theory. See D. 64 at 10-13.[3] Accordingly, the Court considers only SAC Count III and Counts IV and V under a reasonable accommodation theory as the remaining live claims.[4]

### B. Counts IV And V – Reasonable Accommodation

A *prima facie* case[5] under a reasonable accommodation theory requires: "(1) a qualifying disability; (2) knowledge on the part of the defendant of the disability . . . ; (3) a request for accommodation that is both reasonable and necessary to allow equal opportunity for use and enjoyment of the housing; and (4) [] the defendant refused to make the requested accommodation." PSI, LLC v. Nautilus Ins. Co., No. 12-cv-12073-DJC, 2014 WL 7409578, at *6 (D. Mass. Dec.

---

[3] Count IV in the SAC also references violations of Plaintiffs' equal protection rights under the Fifth and Fourteenth Amendments. D. 44, ¶ 37. The parties have not asserted that this is a live claim in the case and the Court has not treated it as such.

[4] In denying in part Defendants' motion to dismiss, the Court referenced the decision of another session in this district which found that application of the Sprinkler Law to sober houses violated the Massachusetts Zoning Act ("MZA"), Mass. Gen. L. c. 40A. See D. 31 at 14-15 (citing Brockton Fire Dep't v. St. Mary Broad St., LLC, No. 14-cv-13216-RGS, 2016 WL 1452336, at *1 (D. Mass. Apr. 13, 2016) ("Brockton Fire")). Leaving aside the gravamen of Defendants' arguments concerning disagreement with the analysis in Brockton Fire, the question of whether the Court adopts this analysis is moot, because as the Court previously explained, any theories of discrimination or disparate impact in application of the Sprinkler Law or imposition of fines arising from Counts IV and V were dismissed. D. 31 at 13. Count IV and V only survive under a reasonable accommodation theory, whereas Brockton Fire adopted the sober house's position in that case that "the MZA unequivocally prohibits the facially disparate imposition of the Sprinkler Law on a group residence sheltering disabled individuals." Brockton Fire, 2016 WL 1452336, at *2. The Court's analysis denying in part Defendants' motion to dismiss Counts IV and V discussed Brockton Fire, but concluded that any remaining claims in Counts IV and V regarding disparate treatment or impact had been waived and instead analyzed the reasonable accommodation theory of liability, assuming *arguendo* that the Sprinkler Law was valid as applied. D. 31 at 14-17. The Court, therefore, proceeds to the merits of Counts IV and V, where, as discussed infra, the undisputed record shows that these claims otherwise fail.

[5] Claims under the ADA and FHAA are considered "in tandem." Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 n.4 (2d Cir. 2003), superseded by regulation on other grounds, 24 C.F.R. § 100.500(c); see Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 66-67 (1st Cir. 2010).

30, 2014) (citing Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 67 (1st Cir. 2010)). Defendants contend that the third and fourth elements are not satisfied.

A plaintiff has the burden "to demonstrate that his requested accommodation 'seem[ed] reasonable on its face.'" Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 90 (1st Cir. 2012) (alteration in original) (quoting U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401–02 (2002)). The accommodation must also be "necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas." 24 C.F.R. § 100.204(a). To be necessary to afford equal opportunity to use and enjoy a dwelling unit, an accommodation must be "indispensable or essential[] to achieving the objective of equal housing opportunities between those with disabilities and those without." Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City, 685 F.3d 917, 923 (10th Cir. 2012). The request "must explain how the accommodation requested is linked to some disability." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001).

Plaintiffs requested a reasonable accommodation in several forms, including: (1) reducing occupancy at the sober houses to five or fewer people each and receiving an exemption from the Sprinkler Law, though when Goldstein asked that this request be confirmed and memorialized, Summers decided not to lower occupancy, D. 54, ¶¶ 33-35, 39; (2) that there should be no sporadic inspections by the Fire Department to verify occupancy numbers because such inspections would violate the occupants' rights as disabled individuals; (3) that Plaintiffs were not obligated to install a sprinkler system because single family homes are not required to do so; and (4) that the price would be too high, D. 54, ¶¶ 36-38. Accommodations because of cost or financial hardship are generally not considered to be reasonable or necessary, especially in this case where the purported financial hardship would fall on Plaintiffs and not the sober house residents. See, e.g., Salute v.

Stratford Greens Garden Apartments, 136 F.3d 293, 301 (2d Cir. 1998); Bryant Woods Inn v. Howard Cty., 124 F.3d 597, 605 (4th Cir. 1997); PSI, 2014 WL 7409578, at *7; Brighton Vill. Nominee Trust v. Malyshev, No. 00–12311–G, 2004 WL 594974, at *6 (D. Mass. Mar. 23, 2004). Accordingly, this economic rationale is not a reasonable or necessary basis for the accommodation.

As to lowering occupancy, it is undisputed that Defendants offered to exempt Plaintiffs from application of the Sprinkler Law if occupancy was lowered and inspections were permitted, but when Plaintiffs were asked to confirm that request in writing, it was withdrawn. D. 54, ¶¶ 33-35, 39. The reasonable accommodation requirement applies when "triggered by a request," Reed, 244 F.3d at 261, and when the request is voluntarily withdrawn, it cannot be relied upon to prove that the defendant refused to make the accommodation. See Aldini v. Kroger Co. of Michigan, 628 F. Appx. 347, 351-52 (6th Cir. 2015); Arndt v. Ford Motor Co., 247 F. Supp. 3d 832, 851-52 (E.D. Mich. 2017). Accordingly, this accommodation, regardless of whether it was reasonable and necessary, was withdrawn and cannot be relied upon in support of a reasonable accommodation claim.

As to the proposed inspections and the existence of other carve-outs from the Sprinkler Law,[6] as the Court noted in denying in relevant part Defendants' motion to dismiss, it is often the case that questions of whether an accommodation is reasonable and necessary are fact-intensive and not suited to resolution on a motion to dismiss or even summary judgment. D. 31 at 16-17 (citing Valle-Arce v. Puerto Rico Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011); Wisconsin Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 749 (7th Cir. 2006)); see Calero-Cerezo v. U.S.

---

[6] The Court notes that determining the reasonableness of a proposed accommodation relating to zoning laws and variances should be evaluated by comparison to other entities that "are governed by the same zoning ordinances that apply here," rather than entities, such as single family homes, that are not governed by the zoning law. Woodward v. City of Paris, Tennessee, 520 F. Supp. 2d 911, 917 (W.D. Tenn. 2007).

Dep't of Justice, 355 F.3d 6, 24–25 (1st Cir. 2004); Rennie v. United Parcel Serv., 139 F. Supp. 2d 159, 167–68 (D. Mass. 2001). However, at the summary judgment juncture, that proposition assumes that a plaintiff, who has the burden of demonstrating that the proposed accommodation is reasonable and necessary, Jones, 696 F.3d at 90, has marshaled some scintilla of evidence in support of same. The Court must consider, for example, "portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any," identified by the parties. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Celotex Corp., 477 U.S. at 323); see Fed. R. Civ. P. 56(c); D. Mass. L.R. 56.1. In this case, Plaintiffs have not offered any specific admissible evidence that barring fire inspections of the sober houses or otherwise exempting them from application of the Sprinkler Law by treating them the same as single-family homes is reasonable and necessary. Even if Plantiffs point to Summers' deposition testimony that any inspections might heighten or worsen the residents' anxiety, D. 55-1 at 35-37, to raise a question of fact with respect to reasonableness, no evidence in the record supports or implies that these accommodations are necessary. See Oxford Investments, L.P. v. City of Philadelphia, 21 F. Supp. 3d 442, 458 (E.D. Pa. 2014) (allowing summary judgment because plaintiff, a sober house organization, "failed to submit record evidence to demonstrate" that the proposed reasonable accommodation "would create better outcomes for the residents or make the Property fiscally viable"); cf. PSI, 2014 WL 7409578, at *7-8. Accordingly, summary judgment is warranted as to Counts IV and V.

### C. Count III – Civil Conspiracy

SAC Count III alleges that the Defendants conspired to interfere with and deprive the sober houses' residents of their rights under the ADA and FHAA. D. 44, ¶¶ 31-32. There are two types of civil conspiracy claims under Massachusetts law. The first type "has most frequently been

applied to combinations of employers or employees working together in 'concerted refusals to deal.'" Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 362 (D. Mass. 2002) (quoting Mass. Laborers' Health & Welfare Fund v. Philip Morris, 62 F. Supp. 2d 236, 244 (D. Mass. 1999)). This type of civil conspiracy claim is "rare" and "very limited" outside the context of "direct economic coercion." Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 244. It requires the plaintiff to allege and prove that the defendants by "'mere force of numbers acting in unison' . . . exercised 'some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had.'" Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 244 (quoting Fleming v. Dane, 304 Mass. 46, 48 (1939)). SAC Count III does not make any allusion to such a conspiracy.

The second type of civil conspiracy "is not an independent action" and is akin to the imposition of liability "on one individual for the tort of another." Grant, 183 F. Supp. 2d at 363 (internal quotation marks omitted) (quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 188 (1998)). SAC Count III cannot be maintained as a separate claim under this theory. Even if the Court were to construe SAC Count III under the second type of conspiracy, Plaintiffs have no independent claims asserting tort liability against Defendants. See Kurker, 44 Mass. App. Ct. at 189. Furthermore, even if the Court were to construe SAC Count III as based on a conspiracy to violate the ADA and FHAA, such a prayer is not supported by Massachusetts law. Even if it were, Counts IV and V have failed, thus eliminating any underlying liability to which civil conspiracy tort relief could be attached. Accordingly, SAC Count III also fails.

**VI.    Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 52.

**So Ordered.**

                                                    /s/ Denise J. Casper
                                                    United States District Judge